1

```
                IN THE UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF ILLINOIS
                           EASTERN DIVISION
```

| | |
|---|---|
| RBG PLASTIC LLC d/b/a RESTAURANTWARE, | Case No. 17 CV 6283 |
| Plaintiff/Counter-Defendant, | Chicago, Illinois |
| vs. | June 4, 2019 |
| | 9:37 AM |
| FIRST PACK LLC d/b/a PACK N WOOD, | |
| Defendant/Counter-Plaintiff. | |

```
                TRANSCRIPT OF PROCEEDINGS - Status
                BEFORE THE HONORABLE MANISH S. SHAH
```

APPEARANCES:

For the Plaintiff:    JAYARAM LAW, INC
                      BY:  MR. BRETT A. MANCHEL
                      125 South Clark Street
                      Suite 1175
                      Chicago, Illinois  60603


For the Defendant:    MANDELL MENKES LLC
                      BY:  MR. GEORGE V. DESH
                           MR. STEVEN L. BARON
                      One North Franklin Street
                      Suite 3600
                      Chicago, Illinois 60606




Court Reporter:       SANDRA M. MULLIN, CSR, RMR, FCRR
                      Official Court Reporter
                      219 S. Dearborn Street, Room 2260
                      Chicago, Illinois  60604
                      (312) 554-8244
                      sandra_mullin@ilnd.uscourts.gov

| | |
|---|---|
| 1 | (Proceedings heard in open court.) |
| 2 |     THE CLERK:  17 C 6283, RBG Plastic versus First Pack. |
| 3 |     MR. MANCHEL:  Good morning, your Honor.  Brett |
| 4 | Manchel for the plaintiff. |
| 5 |     MR. DESH: Good morning, your Honor.  George Desh and |
| 6 | Steve Baron on behalf of First Pack. |
| 7 |     THE COURT:  Good morning.  I can give you a ruling on |
| 8 | the motion to strike the plaintiff's expert. |
| 9 |     The standards are well settled and both sides agree |
| 10 | on the basic standards under Rule 702.  I am to exercise a |
| 11 | gatekeeping function to make sure that the expert has an |
| 12 | adequate foundation by way of qualifications and methodologies |
| 13 | that are applied to a relevant issue and would be helpful to |
| 14 | the jury, or factfinder, to hear. |
| 15 |     Mr. Hartzer is qualified to discuss search engine |
| 16 | optimization and marketing techniques.  He is not a lawyer and |
| 17 | cannot provide opinions interpreting the settlement agreement. |
| 18 | He may not opine that certain usage violates the settlement |
| 19 | agreement.  For example, Paragraph 20 of his report contains |
| 20 | that kind of statement. |
| 21 |     The amended complaint does include allegations of use |
| 22 | or utilization of prohibited words, not just bidding on them. |
| 23 | Although, the main focus of the complaint is about bidding, so |
| 24 | I can see why that's been the focus of discussion.  But how the |
| 25 | words might be found by search engines and tied to the |

defendant is a relevant topic in the litigation.

Mr. Hartzer, though, does not have a reliable methodology or qualifications to opine that the other offices are part of the same company and attributable to the defendant or that the defendant controls those websites. So I am striking that opinion.

He does not have a qualified foundation to render an opinion that this defendant controls the other websites, such that he can say they are using the slogans on the foreign websites. He also cannot opine that websites are not printed material under the agreement. That's in one way a legal conclusion of applying the terms of the settlement agreement; and, on the other hand, he is also not offering any helpful expertise when he says websites don't use ink and paper. That's just common knowledge. That doesn't require any expertise. And I would not permit him to offer that testimony.

But he can describe how search engines associate terms from one site -- from one website with another, based on links. He can explain the links as he found them. He is qualified to explain how linking works and how search engines can generate hits associated to this defendant based on the foreign websites. Whether that amounts to use under the settlement agreement is a different matter that he may not opine on. The jury can decide whether that is used or not. And his qualifications are not helpful beyond the point of

describing how search engines capture the information.

So focusing on his conclusions that are on Pages 27 through 29 of the report, his Opinions 2 through 4 are limited along the lines that I've just discussed. He is not able to say, this particular defendant used the slogans, and he is not permitted to say that this defendant owned or operated the other websites. But he can provide opinions about how websites are accessible, how they receive internet traffic from visitors located in the United States and how -- how that -- how he observed those links and how they work. He may offer his opinion about how -- because of the links, how search engines then make certain connections to the defendant through the research he has done. So his opinions in that regard are admissible.

Opinion No. 5, that the defendant has not excluded certain phrases from their ad campaigns, is permissible. He has an explanation, based on his experience in the industry, namely the use of negative keywords to exclude search terms, and that supports his opinion. Its relevance might be debatable, and down the road I may exclude it on relevance grounds. But for present purposes, I'm not excluding it on Rule 702 grounds.

Finally, with respect to damages, his Opinion No. 6, he can offer an opinion that traffic to the sites resulted in sales. He has explained his methodology. The weakness in that

1  methodology is not so weak that it's entirely inadmissible.
2  Cross-examination can expose the lack of credibility in his
3  methods.  But he has no basis to opine that those sales were
4  lost sales for the plaintiff.  There is nothing in his report
5  or qualifications or his methodology that supports that.  He is
6  not a causation expert, he is a search engine optimization
7  expert.  So he may not offer an opinion that those sales are
8  lost sales to the plaintiff.
9             So for those reasons, the motion to strike is granted
10 in part, denied in part.
11            And what's next?  Summary judgment?
12            MR. MANCHEL:  Yeah, we talked briefly yesterday, or
13 e-mailed, and would suggest maybe 60 days for dispositive
14 motions.
15            MR. BARON:  That's fine.
16            MR. DESH: Yes, that's fine.
17            THE COURT:  Will both sides be filing dispositive
18 motions, or is it just -- or just the defendant?
19            MR. MANCHEL:  I think we would as well.  I understand
20 that results in the cross-motions, and sometimes judges like to
21 have one side do it.
22            THE COURT:  Why don't we do this:  I'll give you a
23 date for dispositive motions in about 60 days.
24            THE CLERK:  It's going to be Monday, August 5th,
25 everyone.

1         MR. MANCHEL: August?

2         THE CLERK: 5th.

3         MR. MANCHEL: Can we possibly have until that Friday?

4         THE COURT: That's fine.

5         THE CLERK: The 9th, then.

6         MR. MANCHEL: Thank you.

7         THE COURT: But what I'd like from the parties is by
8 Friday, August 2nd, I'd like a status report containing a
9 proposal for how you'd like to brief the forthcoming
10 dispositive motions. By that time, you'll have made your
11 decisions about whether both sides are filing motions, or not.
12 You'll be well on your way to thinking about how many contested
13 or uncontested facts are at issue and whether we need two
14 responses and two replies or we can do some kind of
15 consolidated briefing, in light of the forthcoming motions.
16 I'd at least like you to think about what's the most efficient
17 way to brief them.

18         File a status report by Friday, August 2nd, and I'll
19 enter a responsive scheduling order on the motion. So you
20 don't need to notice the motions for presentment. Those are
21 due on Friday, August 9th. Status report due Friday,
22 August 2nd, and I'll enter a responsive schedule.

23         Is there anything else we should cover this morning?

24         MR. DESH: Not from our side.

25         MR. MANCHEL: Thank you.

1 THE COURT: Thank you.
2 (Proceedings concluded.)

CERTIFICATE

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

/s/ *SANDRA M. MULLIN*   June 5, 2019

SANDRA M. MULLIN, CSR, RMR, FCRR   Date
Official Court Reporter